Argued February 27, affirmed May 30, 1978

STATE ex rel DEPARTMENT OF
TRANSPORTATION, *Respondent,*
*v.*
TURNIDGE et al, *Appellants.*
(No. 22676, CA 8595)

579 P2d 284

Owen M. Panner, Bend, argued the cause for appellants. On the brief were C. Montee Kennedy and Panner, Johnson, Marceau, Karnopp & Kennedy, Bend.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff State of Oregon brought suit to quiet title to a 250-acre tract of real property located on the west side of the Willamette River in Polk County in the vicinity of the confluences of the Willamette, Santiam and Luckiamute rivers. Only the 66 acres next to the Willamette River are actually in dispute, however, inasmuch as defendants do not challenge plaintiff's claim to the remaining approximately 184 acres. Defendants own property lying immediately across the Willamette River to the east of the disputed parcel.

Plaintiff claims title to the disputed parcel by reason of accretion to land owned by plaintiff's predecessors. The entire tract was acquired by plaintiff from Crown Zellerbach in 1973 by a bargain and sale deed. The purchase price was $62,500.

Defendants claimed title to the disputed parcel, first, by reason of a purported avulsive change in the Willamette between 1860 and 1890, and second, by adverse possession. The adverse possession issue is not before us on appeal, however, since defendants did not assign as error the trial court's decision against them on this point.

The primary issue presented here is a factual one, namely, was the disputed 66 acres created by accretion or by avulsion. If it was created by accretion as the trial court found, then it follows that title must go to plaintiff; if it was created by avulsion as defendants contend, then title is vested in defendants.

Of necessity the first question to be determined is the movement of the Willamette River between 1852 and 1913, and the nature of that movement.

The following is a summary of the evidence.[1]

Each of the parties produced expert witnesses who testified as to their opinions relative to the movement

---

[1] Adapted from the trial judge's memorandum opinion.

of the river during that period of time. That evidence was conflicting and contradictory in many areas. Plaintiff's expert witness testified that the Willamette River moved by an erosive process from the west to the east from its original boundaries in 1852 to its boundaries in 1913. Plaintiff's expert relied primarily upon two exhibits to form his opinion that it moved by an erosive process, one being a map of the area made in 1875 based on an Army Engineers' survey of 1852 and the other being an Army Engineers' map of the Upper Willamette River done in 1895, and based on an Army Engineers' survey of 1875, which, if correct, clearly show the river gradually eroding from the east bank and accreting to the west bank. These maps in turn formed the primary basis of an exhibit prepared by plaintiff's expert consisting of a series of mylar plastic sheets which was his step-by-step analysis of how the river changed by accretion after 1852.

The testimony of the defendants' expert witness on the other hand was that while the river moved from its original location in 1852 by an erosive process southerly over a period of 10 to 15 years, between the years 1860 and 1890 there was an abrupt sudden shift within a period of two to three years, or one flood season, back to the new location, and that this change was by a process other than erosion, namely, by avulsion. The opinion of the defendants' expert was based upon the quadrangle topographic map of 1913 showing a change in the drainage pattern from south to north as it existed in 1852 to an east to west pattern and into the Luckiamute River by 1913; that the Willamette River has continued to move from 1913 by a process of erosion and accretion northly to its present location. The defendants' expert based his opinion primarily upon the topography of the disputed property caused by the changes in the volume of water carried in the Santiam River. He gave no weight to either the 1875 or 1895 maps prepared by the Army Engineers and describes them as purely "road maps."

Plaintiff's expert on the other hand testified that there had been no avulsive change in the Willamette River.

Despite extensive cross-examination, neither expert retreated from his basic analysis and opinion.

The original Army Engineers' survey of 1852 was a precise survey by metes and bounds of the bank of the then existing Willamette River. Neither the map of 1875 nor the map of 1895 contains the precise meanderings of the river as it was located during those years; the maps are primarily of soundings, channels, shoals and wing dams.

The evidence established that the disputed property was heavily wooded with cottonwood trees at least in the 1940's; that there were thick underbrush and blackberry briers that would not permit free passage by individuals; that the disputed property flooded during flood seasons. The evidence further established that there was no water or marshland existing in the various former locations of the river. The primary evidence of the defendants deals with the change in the drainage pattern between 1852 and 1913 and the transects as shown on one of defendants' exhibits.

As the trial judge indicated, the central issue of erosion versus avulsion turns primarily upon the validity of the 1875 and 1895 maps prepared by the Army Engineers. According to their legend these maps were prepared during the lowest stage of the river. The 1895 map was precise in its notations as to the various soundings taken in the river. Both maps were prepared primarily for navigational purposes.

From our independent examination of the record we conclude that (1) the disputed 66-acre parcel was created by erosion of the east bank of the Willamette River and accretion to the west bank, rather than by avulsion as contended by defendants, and (2) defendants' evidence was insufficient to establish a valid claim.

Affirmed.